Thank you, Your Honor. Good morning, and may it please the Court, I am Taylor Cunningham and I represent the appellant plaintiff, Jesse LeBlanc. There are two primary issues in this case, whether there are genuine issues of material fact regarding whether the Department failed to reasonably accommodate Mr. LeBlanc, and two, whether they're the same regarding whether the Department's stated reasoning for not selecting Mr. LeBlanc for the training instructor position is a protectual one for disability discrimination. As to the first issue, the most important point is that the Department, by its own admission, did not make any effort to identify and provide a reasonable accommodation after deciding that one accommodation, specifically no or limited night shifts, which Mr. LeBlanc did request among others, violated the Collective Bargaining Agreement, or the CBA. As we said in briefing, Mr. LeBlanc concedes that an accommodation of no or limited night shifts did violate the CBA. Jesse LeBlanc Why isn't that case over? And the reason why I ask is because we have case law that says if a reasonable accommodation would require a violation of the Collective Bargaining Agreement, that's it. It's, you know, you can't have that, it's an undue hardship on the employer. Right, Your Honor. But there's other accommodations that could be offered. That's not the end of the story. As the 30B6 component said, for the government, absolutely unequivocally said, at that point, specifically, after you determine that a specific accommodation violates the CBA, you go back and you start the interactive process again to determine whether there is another reasonable accommodation, which they could provide an employee within their current position. Judge Goldberg Does it matter, though, and you admitted this earlier in the argument, which is that he had already asked for night shifts. I mean, there's unequivocal evidence or not, no night shifts, excuse me. There's unequivocal evidence in the record about that. And does that, do they have to go back when the accommodation he asked for is not permissible under the CBA? Yes, I think so. The Department has a duty under the Rehabilitation Act to find an accommodation that works. So, obviously, he requested one and he was stopped from being able to use that accommodation due to the CBA. But that's, again, that's not the end of the story. The manual, to which they rely on, says you must go back. You must start again. Well, and they kind of did that in some sense. They didn't do it interactively, but they said you can have a different position, the transportation assistant position, which actually satisfies the earlier request you made, which is rare, if ever, would you have a night shift. And why isn't that sufficient to constitute a reasonable accommodation at that point? Sure, Your Honor. Like the Court said in Craven, the reassignment is an accommodation of last resort. You must first try to find a reasonable accommodation within that person's current position, which is a police officer. They stuck him way outside of the police department as a transportation coordinator scheduling veterans to get to the VA. They made no effort and they admit no effort whatsoever after general counsel called and said no or limited night shifts violates the CBA. They said, okay, we're going to reassign him. So the real problem here is not the CBA. It's not necessarily the reassignment. It's the fact that the employer didn't go back and said, we know you requested no night shifts, but we want to know if you really mean it and we want to know if you want to change your mind about that. And is there any case holding that that is enough to give ADA liability? Well, it's the general principle that under the Rehabilitation Act that you must, that their interactive process is a continuing one. You can't just offer or even accept a reasonable accommodation request and then take it away and say, sorry, the process is done. That's why the interactive process is theirs. But they offer the other position and your client accepted it at that point, right? Well, he either had to accept it or be terminated. Well, he could have come back and said, well, how about this, right? How about, can you find me a job that requires less walking around or something like that? Is the burden clearly on the government here to do that, to kind of fish around for what your client really, really is looking for? No, Your Honor. The, Mr. LeBlanc requested several accommodations in his initial request form. And among those, they granted three or four of them. That request form is at Addendum 33. When they provided those, they only took away, found that one violated the CBA. The question is, why didn't they continue providing the others? There is no, there was no determination by the Department that the other accommodations that were provided violated the CBA or that they couldn't be continued. In fact, Ms. Hovery, the coordinator at the VA, said that none of the other accommodations that were granted to him would cause an undue hardship. That was not a reason. What burden is it to show that there were alternate positions that they could have provided that would have satisfied his other requests? Sure. So, Filstead v. Pizza Hut says, the plaintiff need only make a facial showing that a reasonable accommodation is possible. Okay. And where and when did you make that showing? So he made it at the, well, he made it when he requested and was granted other accommodations. They only took one away. If those accommodations violated the collective bargaining agreement, at least some of them, right? No, only one of them. So you're saying they should have given him the three others? Is there a position or two others or however many? Is there any evidence that there was a position that would allow them to take away the night shifts but still grant the other accommodations? Well, we're not, Your Honor, we're not looking for another position. He's trying to stay in his current position, which is the purpose of the interactive process and the duty for the government to provide a reasonable accommodation. Reassignment is the last resort. So, counsel, it seems to me what you're really arguing is that there is an affirmative legal obligation to continue this interactive process and dialogue beyond the first step. Can you give us any case support for how we determine how much interactive process is enough? So I don't have a case from this circuit. Other circuits have said it's a continuing one that you can't just end after one failed attempt. I don't have that case on me. I can possibly find it for rebuttal. But it's a continuing one. Courts have described it as a continuing one. I don't know, I want to go back to the point that Mr. LeBlanc said that with those other, he could still work night shifts along with the other accommodations that were previously provided and that would accommodate with him, that would accommodate him within his position as a police officer. So he could work night shifts to the extent the others were working night shifts? Yes. In a fair and equitable basis? Yes. Yes. And there was some discussion and Ms. Hovery standed by the fact, the EEO coordinator standed by the fact that Mr. LeBlanc's physician said that he could not work nights and that's absolutely not true. She finally conceded in her deposition, I'm not a physician and it doesn't unequivocally say he can not work nights. I think the issue is, they failed their duty, they were lazy. They said, this violates the CBA, we're reassigning you. There was nothing left. Mr. LeBlanc appealed that decision. He pleaded with the director of the VA and Ms. Hovery to provide him accommodations within his position and they simply refused. There was no meaningfully good faith accommodation process. The district court and the government makes a lot to do with the initial interactive process, but there was no interactive process after the determination was made that one of those accommodations violated the CBA. It went from that determination to reassignment. Reassignment or nothing. You don't think, I'm just going to ask this question one more time in a different way. You don't think that the employer could have reasonably concluded, and there is evidence, I don't really want to work night or my health doesn't really permit me to work a lot of night shifts, I need a stable schedule. They could have just said, well, I don't think this police officer job works anymore based on what you had already told them or your client had already told them. First, there is no evidence in the record that they made that determination. Second, he did come back and say, hey, I can work nights. I can get a different note from the doctor if you need it, although Ms. Hovery admitted that that necessarily wasn't needed. They still made no effort to accommodate him. The process just ended. I don't know what the purpose of the interactive process is if you can just determine one accommodation is not going to work and move on. I would like to get to the non-selection claim, if I may. On this second issue, there is ample circumstantial evidence in which a fact finder could decide that the department stated reason for not selecting Mr. LeBlanc for the training instructor position is protectual for disability discrimination. The reasons, as the circumstantial evidence is outlined succinctly in pages seven and nine of our reply brief, I'll go over at least one, maybe two. The department ultimately claims that Mr. LeBlanc, who was the highest scoring candidate by far in the first interview, was not selected for the training instructor position because of a, quote, rumor, unquote, which was directed to Chief Blumke, Mr. LeBlanc's supervisor and the decision maker for that position. They learned that from Mr. LeBlanc's competitor for the instructor position. Chief Blumke did not interview Mr. LeBlanc about this, quote, unquote, rumor, again, which allegedly came from a VA nurse that was presented to Mr. Blumke by a competitor for the position. Mr. Blumke only exchanged one email with the nurse the issue and moved on from there. There was no further investigation. Mr. Chief LeBlanc says he, unlike the process for the detective position, which is briefed, there was not a second interview. He said there was a second interview because of the rumor. There is absolutely no evidence, not one piece of evidence that says that this was a factor in him deploying, employing a second interview. The rumor. You're saying the rumor was a factor. That's correct. In fact, Mr. Blumke, it is the merit promotion form 42-44, the addendum. The form states that the other candidate was selected over Mr. LeBlanc and a second interview was conducted because, quote, scoring was, quote, close, unquote, and because that concerns were provided in the comments of the interviewers from the first interview, who were three independent panelists. First, scoring was not close. Mr. Blumke admitted in his deposition that Mr. LeBlanc's score was significantly higher, quote, than the other candidates. Second, there were no concerns by interviewers in the first round concerning the rumor. They didn't know about it. And now, despite that, the department is claiming that was one of the reasons for conducting the second interview. So at heart of this case is whether the department performed a sufficient investigation or whether that investigation or lack thereof is evidence of pretext. Mr. Cunningham, you may continue or save the rest of your time for rebuttal. I will continue, Your Honor. And Uriman v. Casey, General Store, in that case, the courts affirmed summary judgment to the employer, but that was because the misconduct was on camera. And this Court said, why would a more searching inquiry change anything? It obviated the need for any additional investigation. That's obviously not the case here. It's hearsay from a nurse that was presented by a less than credible source being the competitor for the position. And then again, in Yearly Well v. UPS, the employer conducted a thorough investigation, spoke, quote, to anyone who might have information regarding the alleged conduct, including the plaintiff employee. There is no such thorough investigation in this case. There was no such investigation in this case, and Mr. LeBlanc was not interviewed. The biggest problem with the department's stated reason for Mr. LeBlanc's non-selection is that there is no evidence, zero evidence, that until the EEO process and this litigation that Blumke based his decision on the quote, unquote, rumor. So, another one is that Blumke claimed that in his interview that there wasn't any outside information that was factored into the interview process, except for the overall interview and resume. Well, the rumor is outside information. So, this is only during the EEO process and this litigation that he claims it was a rumor why he did not select Mr. LeBlanc. We ask you reverse and remand. All right. Thank you, Mr. Cunningham. Thank you, Your Honors. And we'll pause for the, for a moment here. All right. Ms. Voss, you may proceed when ready. May it please the Court. My name is Anna Voss, and I represent Secretary of the VA McDonough in this matter. District Court Judge Susan Richard Nelson granted summary judgment for the VA on all of plaintiff's claims, and this Court should affirm. I'll start with the reasonable accommodation claims, Your Honor, and I particularly want to address the questions about the interactive process because the facts are quite clear here. We've pointed out in our brief that there was substantial interaction that did continue throughout the process leading up to the reassignment. This was done through interactive meetings in person with Mr. LeBlanc, Chief Blumke, and Dr. Hoveray. It was done in writing many times, emails exchanged back and forth between Dr. Hoveray, Chief Blumke, and Mr. LeBlanc, as well as emails from Mr. LeBlanc to his colleagues explaining exactly what he wanted. How much of that happened between the time that they made the discovery of the collective bargaining agreement that the interim accommodation couldn't go on and then the assignment to the transportation assistant position? After the General Counsel weighed in and said that there was a violation of the collective bargaining agreement, the reconsideration process kicked in, and that was part of the interactive process, Your Honor. That gave Mr. LeBlanc an opportunity to submit written documentation to Ms. T. Schaefer explaining his request and ways that he thought the VA had not participated or other accommodations that could have been granted. He was given an in-person meeting with Ms. T. Schaefer, which he also had a union representative present. During the course of that meeting, Mr. LeBlanc continued to express that he wanted a day He says, though, that one of the VA supervisors, I think it was Ms. Hoveray, may have said, you don't need that. We don't need that. Is there any evidence in the record of that? I don't believe that evidence is in the record, Your Honor. Again, he didn't make an attempt. There was no change. Well, I would take this requirement. I would not take this requirement. There wasn't any sort of secondary proposal from him that the VA could use to, you know, sort of undermine what he had been saying all along, which is I need a day shift. But he did submit a list of several proposed accommodations, didn't he? And one of those was limited night shifts. The other was a stable work pattern. But, you know, the ability to call in sick, the ability to limit distractions. Was there a discussion about those other requested accommodations or did the process focus primarily on the night shifts? I would say, Your Honor, there are a couple of those at the end of the list that Mr. LeBlanc doesn't, I'm sorry, Mr. LeBlanc doesn't contest here. You know, calling in sick, not having distractions, those were inherent in his position already. He had that right. They weren't addressed during the accommodation process, but they're not challenged. As to some of the other sort of 1 through 5, Your Honor, I think there was never, because of how forcefully the medical documentation came out, how clear that was, because of the primary thing I'm requesting is a day shift. Who was the burden on to kind of propose accommodations during this process? I think your friend is suggesting that the VA had an obligation after the initial kind of interim accommodation fell through to propose specific additional requirements. What's your response to that? The process does have to be interactive, Your Honor. And within the context of this case, where we have clear statements saying I need the day shift, the VA is not under an obligation to disbelieve Mr. LeBlanc, to discredit his medical documentation and question that. There is an onus on Mr. LeBlanc if he's saying, well, actually, I don't need those things I asked for to come forward and say, and here's what else I could propose. Because at that point, it was quite clear to the VA that he requested a day shift. Ms. Voss, is there a standard by which we can determine how much interactive process is enough? I think the standard is that it's flexible and that it is sort of fact-dependent, Your Honor. But this is significantly more process and more interaction than was found, for example, in the Fijelstad v. Pizza Hut, I'm sorry, I don't know how to pronounce that, or some of the other cases in which this court has found the employer to fall short. And here, the interactive process did work. The VA offered an accommodation that was accepted by Mr. LeBlanc that was within its choice. The obligation is not on the employer to give the employee what he asks for, a remaining-in-my-police-officer job but not working the Panama schedule. The VA offered an accommodation that was effective, that was a day shift, that met his requirements, and satisfied the VA as well. There is a two-part, it has to work for both parties, Your Honors. There is no case law that says we have to keep him in his position if it's clear that that's not going to work, which it did become clear over the course of the interaction here that that was not going to work. The reassignment was appropriate in this case and was within the VA's choice. It's undisputed, Your Honors, that at a minimum, Mr. LeBlanc needed a deviation from the Panama schedule. And that would have caused him to work harder, caused other employees to have to cover shifts, and is very comparable to the course decision in Rares, R-E-H-R-S, in which the day shift was also at issue. Judge Nelson found that the plaintiff did not satisfy his prima facie case on his reasonable accommodation, and even if he had, because in part he did not identify a reasonable accommodation that was possible. There was no identification of an open position within the police department that would have allowed him to move into a day shift. And there was no other, he still to this day has not explained why limited weekends would not be a violation of the CBA or would not be a deviation from the Panama schedule. It certainly would, and all of the same concerns are triggered by that. He has not explained and not identified and not satisfied his burden to show there is a ordinarily or in the run of cases that would have kept him within the police department. And the VA has also met its burden to show hardship through the violation of the CBA. On the failure to hire claims claim, Your Honor, there's just one claimant. Sorry. The record here is clear as well. Mr. LeBlanc was not selected for the training instructor because Chief Blumke determined based on the totality of the circumstances and a significant amount of data that was available to him to evaluate as hiring manager. Counsel, this seems like a really suspicious process to me. You've got the strange selection of interviewers, you've got the disregarding of scores in interviews, and it just seems like an unusual process, Your Honor, because of the unusual circumstances that arose here. With the timing of when Mr. Blumke, Chief Blumke found out about this rumor, as we're calling it, that interrupted sort of the standard process that makes it distinguishable from what happened in the detective position. So when did this rumor surface? That's where you keep going. I'll let you go there. But when exactly did this information surface? The rumor surfaced after the first round of interviews and before a selection was made for the training instructor, at which point Chief Blumke has been clear throughout, Your Honor, that he did consider the rumor in determining whether to hold a second interview or to engage in an additional process before making the decision. Your side, I think, suggested that there was no outside influence and that it was based on, the second interview was based on the first, or comments from the first interviewers. I may have misunderstood his argument, but would you respond to that? Chief Blumke has said, he said in his EEO interview and as well in his deposition, you can see it mostly, I think it's well explained at appendix page 424 through 426, he said there were comments made after the first interview. There's a narrative section at the end of the score sheets that two commenters essentially said, we heard that he gave good answers, but those maybe are not consistent with his past practice and may be essentially Mr. LeBlanc telling us what we want to hear in the interview. So that in combination with the information directly from Nurse Zastrow, where she said, I heard Mr. LeBlanc say he would not respond to an active shooter and would run the other way. Both of those, Chief Blumke explains in that appendix site 424 through 426, prompted the second interview. The evidence, and Your Honor, I will agree that it is unusual, again, because of unusual circumstances, but we provided evidence from David Peterson in HR for the VA to explain that hiring managers are given discretion to develop a flexible process to make sure that their concerns are met. And here, Chief Blumke said in his first email to Nurse Zastrow, I'm startled by this information. And he designed a process after the fact to inquire into whether Mr. LeBlanc was suitable for the training instructor position. Did the rumor play a role in the final decision that Chief Blumke made or did he put that aside after investigating it? Chief Blumke has said that he made the decision based on the interview responses. I think counsel for the plaintiff says it was only the first interview. I don't think that's correct in the record. And I think the Chief testified to that, certainly, that he considered both interviews. But that is how he has framed it. So he did both a first and second interview. So the record shows that both sets of interview questions or both sets of scores were considered by Chief Blumke? Yes. Second interview was conducted by two individuals, is that right? That's correct, Your Honor. Is it correct that they both scored both applicants identically? In other words, they both, their score sheets were identical? That is correct. Their score sheets are identical in terms of the numerical score given, not in terms of the commentary that's written. Each wrote their own description and the court could read those. Certainly, I think it's undisputed if you read those that Mr. Smith, who was the second interviewer, agreed generally with the assessment of Chief Blumke that Mr. Smith was not as fulsome and not the qualities that the Chief was looking for, which he could define as a hiring manager. Isn't there an argument, though, if you're looking at this purely from an objective point of view, looking at the scores, that if there was truly a tie on the second set of interview, or a tie in the scoring of the second interview, that Chief Blumke should have taken the much higher scores on the first interview, sort of put them together, looked at both of them, and LeBlanc would have ended up coming out on top? There is nothing in VA hiring practices that requires the decision to be made based on scoring. Chief Blumke was looking at the totality of the circumstances and scores were one piece of data in that. His personal experience with Mr. LeBlanc was another piece. The commentary of the interviewers was another piece. The resume is certainly the answers to the questions and what he heard. The references, which I know there's a dispute as to whether he read the references, but ultimately it's not. We don't believe it's material. We've explained that in our brief. What about the argument, though, that, and maybe you can address this, the thoroughness of the investigation, that the investigation as to the rumor wasn't very thorough and it should have been because it's what initiated the second interview process? So the fact that the rumor wasn't substantiated or insubstantiated or whatever the case may be and wasn't investigated thoroughly shows that it was just a pretext for not choosing him. A couple of responses, Your Honor. I would say, number one, the context matter, and that Chief Blumke did give an opportunity that was relevant to the context for Mr. Blumke to address the concerns that the rumor raised. This wasn't a disciplinary investigation. And Chief Blumke said it's really the answers and the failure of Mr. LeBlanc to have assuaged my concerns that is factoring into the decisions. I would also just note, Your Honor, that one of the most important things that I haven't said yet is, as Judge Nelson found, it has to be more than just it's a sham for something. You know, Chief Blumke believed the rumor and didn't want to hire him. There has to be a causal connection to disability, and that's absolutely lacking here. These differences, these sort of unusual circumstances of the hiring process are immaterial without that ability to connect it to disability, and nothing here brings that causal connection. Judge Nelson's decision was correct in the correct application of this Court's law to the facts, and we would ask that you affirm. Unless there are questions from the Court, there's no rebuttal time. Thank you, Your Honors.